COURT OF APPEALS 
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 
2-02-223-CR
 
LARRY EDWARD KARNES                                                      APPELLANT 
 
V.
 
THE STATE OF TEXAS                                                                  STATE 
 
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY 
 
------------
 
OPINION
 
------------
 
        I. Introduction 
 
        The State charged Appellant Larry Karnes (“Karnes”) with robbery by 
threats. The indictment included enhancement and habitual offender notices 
based upon two prior felony convictions. Karnes pleaded not guilty to the 
charged offense and true to the enhancement and habitual offender paragraphs. 
A jury convicted Karnes and assessed punishment at 55 years’ confinement. 
In two points on appeal, Karnes contends that the trial court erred by admitting 
evidence of an extraneous offense for the purpose of proving identity and by 
admitting victim-impact evidence based on extraneous offenses during the 
punishment phase of trial. We will affirm. 
II. Background Facts
        On August 30, 2001, Teresa Garver (“Garver”) pulled into the parking lot 
of a Walgreens store in Arlington, Texas. Upon entering the lot, Garver noticed 
a white Ford pickup truck. As Garver parked her vehicle, she saw the truck pull 
up behind her car and block her in. A young girl exited the truck and 
approached Garver’s car. The girl asked for directions and stated that she 
could not hear Garver’s response with the windows rolled up. When Garver 
rolled her window down, Karnes approached Garver’s car and leaned on the car 
door, blocking Garver’s exit. Karnes demanded that Garver give him money, to 
which she responded that she did not have any money. With his hands hidden 
behind his back, Karnes told Garver, “Don’t make me use this.” Garver was 
frightened by the threat and believed Karnes had a gun. Moreover, the girl with 
Karnes told Garver that Karnes was serious and that Garver should not mess 
with him. Karnes then told Garver that he did not want anybody to get hurt.        At that point, a woman exited the Walgreens and walked to a car directly 
next to Garver’s car where her husband was parked. Karnes then returned to 
his truck and moved it to allow the woman and her husband to back out of their 
parking space. While Karnes was moving his truck, Garver opened her car 
door, pushed the girl out of her way, and ran into the Walgreens. Once inside 
the store, Garver told a manager what had occurred and the manager 
immediately telephoned the police. 
        Approximately ten minutes later, less than one mile down the road, 
another woman, Judy Allen (“Allen”), was robbed outside of a Dillard’s by a 
man driving a white Ford truck. As Allen was attempting to enter her car, she 
felt a tug on her purse. After a very hard second tug, Allen was drug by her 
purse to the truck and pulled to the ground as the truck sped away. As the 
assailant drove away with Allen’s purse, she memorized the license plate 
number.
        Byron Stewart (“Stewart”), an Arlington Police Detective assigned to 
investigate Garver’s robbery, testified that the robberies of Garver and Allen 
were recognizably similar because of the descriptions of the perpetrators and 
the white truck. Accordingly, Stewart testified that he contacted Allen to 
obtain the license plate number of her assailant, ran the plate number through 
the police computer file, and determined that the plate number was registered 
to Karnes. After verifying that Karnes was the owner of the truck, Stewart 
testified that he developed a photo-spread containing Karnes’s picture and that 
of five other men with similar characteristics and showed the photo-spread to 
Garver. According to Stewart, Garver was able to positively identify Karnes in 
“[n]o longer than five seconds.” The police later arrested Karnes for the 
robbery of Garver. 
III. Extraneous Offense Identity Evidence
        In his first point, Karnes contends that the trial court erred by admitting 
an extraneous offense for the purpose of proving identity in violation of rule 
404(b) of the Texas Rules of Evidence. Karnes claims that the Allen offense 
was not sufficiently similar to the charged offense to show a unique signature. 
Moreover, he maintains that even if the extraneous offense evidence was 
relevant, the probative value of the evidence was substantially outweighed by 
its prejudicial effect. 
        A. Standard of Review for a Determination Under Rule 404(b) 
        Rule 404(b) embodies the established principle that a defendant is not to 
be tried for collateral crimes or for being a criminal generally. Tex. R. Evid. 
404(b); Nobles v. State, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992); Booker 
v. State, 103 S.W.3d 521, 530 (Tex. App.—Fort Worth 2003, pet. denied) (op. 
on reh’g); Curtis v. State, 89 S.W.3d 163, 170 (Tex. App.—Fort Worth 2002, 
pet. ref'd). Consequently, extraneous offenses are not admissible at the 
guilt-innocence phase of trial to prove that a defendant acted in conformity with 
his character by committing the charged offense. Tex. R. Evid. 404(b); Booker, 
103 S.W.3d at 529; Martin v. State, 42 S.W.3d 196, 201 n.2 (Tex. App.—Fort 
Worth 2001, pet. ref'd). 
        An extraneous offense, however, has noncharacter-conformity relevance 
where it has any tendency to make the existence of a fact that is of 
consequence to the determination of the action more or less probable than it 
would be without the evidence. Tex. R. Evid. 401; Powell v. State, 63 S.W.3d 
435, 438 (Tex. Crim. App. 2001). That is, extraneous offense evidence that 
tends to make more or less probable an elemental or evidentiary fact or tends 
to rebut some defensive theory is relevant beyond its tendency to prove a 
person's character or that he acted in conformity therewith. Montgomery v. 
State, 810 S.W.2d 372, 386-87 (Tex. Crim. App. 1991) (op. on reh'g); 
Johnson v. State, 932 S.W.2d 296, 301 (Tex. App.—Austin 1996, pet. ref'd). 
Consequently, evidence of other crimes or extraneous misconduct may be 
admissible to prove motive, opportunity, intent, preparation, plan, knowledge, 
identity, or absence of mistake or accident. Tex. R. Evid. 404(b); Booker, 103 
S.W.3d at 529-30. The State, as the proponent of extraneous offense 
evidence, bears the burden of showing admissibility. See Rankin v. State, 974 
S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh'g). 
        The trial court's task is to determine whether extraneous offense 
evidence is relevant for a purpose other than the propensity of the defendant 
to commit crimes or other bad acts. Booker, 103 S.W.3d at 530. Rulings on 
relevance should be left largely to the trial court, relying on its own 
observations and experience, and will not be reversed absent an abuse of 
discretion. Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App.), cert. 
denied, 510 U.S. 966 (1993); Corley v. State, 987 S.W.2d 615, 618 (Tex. 
App.—Austin 1999, no pet.). Moreover, appellate courts should give great 
discretion to the trial courts in matters of relevancy, reversing only if the trial 
court acts outside "the zone of reasonable disagreement." Montgomery, 810 
S.W.2d at 391. A trial court's ruling on admissibility should not be disturbed 
simply because an appellate judge might decide a question differently than the 
trial judge. Id. So long as the trial court's decision to admit or exclude 
evidence falls in the zone within which reasonable minds may differ, appellate 
courts should refrain from disturbing the trial court's decision on appeal. Id.; 
Osby v. State, 939 S.W.2d 787, 789 (Tex. App.—Fort Worth 1997, pet. ref'd). 
        B. 404(b) Relevance Determination on the Issue of Identity 
        The trial court allowed the State to introduce evidence regarding the Allen 
offense. The State argues that the Allen offense was relevant to the issue of 
identity in the Garver offense because the two offenses were similar in nature, 
and the facts of the Allen offense were integral to explain how Karnes became 
a suspect in the primary offense. Furthermore, the State contends that the 
defense opened the door during cross-examination of Garver by making identity 
a contested issue. Karnes maintains that the evidence related to the Allen 
offense was irrelevant because it lacked sufficient similarity to render it 
admissible on the issue of identity in the Garver offense. 
        Identity is an "elemental fact" in every criminal case with relevance apart 
from character conformity. Montgomery, 810 S.W.2d at 387. 
Cross-examination of the State's identifying witnesses can raise the issue of 
identity when the witness is impeached about a material detail of the 
identification or the conditions surrounding the offense charged and the 
witness's identification of the defendant in that situation. Siqueiros v. State, 
685 S.W.2d 68, 71 (Tex. Crim. App. 1985). When identity is an issue in the 
case, evidence of an extraneous offense may be admissible to show identity. 
Lane v. State, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996); Avila v. State, 
18 S.W.3d 736, 739 (Tex. App.—San Antonio 2000, no pet.). Typically, to be 
relevant to the issue of identity, extraneous offenses must share multiple 
common characteristics, or the device used in each offense must be so unusual 
and distinctive as to be like a signature. See, e.g., Taylor v. State, 920 S.W.2d 
319, 322 (Tex. Crim. App.), cert. denied, 519 U.S. 951 (1996). That is, "to 
be admissible to show identity, an extraneous offense must be so similar to the 
charged offense as to mark the offenses as the defendant's handiwork." 
Johnson v. State, 68 S.W.3d 644, 650-51 (Tex. Crim. App. 2002). In 
determining similarity of the offenses for the purpose of establishing identity, 
courts should take into account both the specific characteristics of the various 
offenses and the time interval between them. Id. at 651. Sufficient similarity 
may be shown by proximity in time and place or by a common mode of 
committing the offenses. Lane, 933 S.W.2d at 519. 
        Among the cases upholding admission of evidence of extraneous offenses 
in order to prove identity is Walker v. State, an aggravated rape case, which 
held six extraneous offenses to be sufficiently similar based on the following: 
All the transactions took place at night, in the same area, within a
period of one month. In each case appellant was alone and carried
a small gun. The victims were tied in a similar manner, and robbery
preceded rape in the four instances in which the victim was raped. 
Appellant took all coins but pennies from the victims who had
coins. 

588 S.W.2d 920, 924 (Tex. Crim. App. [Panel Op.] 1979). In Ransom, the
Court of Criminal Appeals held that offenses were sufficiently similar because
the offenses were three days apart and both offenses were robberies
committed at gunpoint by the defendant and an accomplice. 503 S.W.2d at
813. More recently, in Johnson, the Court of Criminal Appeals held that
offenses committed within a few hours of each other, directed at lone women,
and involving another victim's red Ford Taurus were sufficiently similar. 68
S.W.3d at 650-52.
        During cross-examination at trial, the defense questioned Garver about 
the circumstances surrounding the robbery. In particular, the questioning 
focused on the high traffic in the area at the time of the robbery, Garver’s 
ability to see her assailant’s face, the length of Garver’s contact with her 
assailant, and the time elapsed between the robbery and her subsequent 
identification of Karnes in the photo-spread. Before redirect examination of 
Garver, the State argued outside the presence of the jury that the defense 
counsel’s cross-examination had raised the issue of identity. The State 
contended that the Allen offense was admissible under rule 404(b), maintaining 
that the Allen offense was relevant due to a similar modus operandi. In 
response, the defense denied raising the issue of identity and disputed the 
similarities between the Allen and the Garver offenses. Thereafter, the court 
permitted the State to introduce evidence of the Allen robbery and instructed 
the jury to consider the extraneous offense only with regard to the issue of 
identity.
 


        The record demonstrates that the Allen robbery was committed 
approximately ten minutes later than and less than a mile from the Garver 
robbery. See Johnson, 68 S.W.3d at 651 (noting that the exactness that might 
be required of an offense committed at a remote period of time might not 
necessarily be required for an offense committed within a very short period of 
time). The evidence also indicates that both offenses were committed in 
commercial parking lots against lone females who were in the vicinity of their 
vehicles. In both the Garver offense and the Allen offense, a white Ford truck 
was strategically placed behind the victim’s vehicle to facilitate the robbery. 
See Pena v. State, 867 S.W.2d 97, 99 (Tex. App.—Corpus Christi 1993, pet. 
ref’d) (stating that the repeated use of the same car in similar offenses may 
constitute a signature). Although the means used to effectuate the offenses 
were different, the goal of both offenses was to steal property from the victims 
by catching them off guard. See Ransom, 503 S.W.2d at 813 (stating that an 
identical modus operandi is not necessary to render an extraneous offense 
relevant to the issue of identity in the primary offense). 
        According deference to the trial court's reliance on its own observations 
and experience in making a rule 404(b) relevancy determination, we cannot say 
that the trial court abused its discretion by finding that the evidence of the Allen 
offense was relevant for the purpose of proving identity in the Garver robbery. 
We conclude that the proximity in time and place of each offense, the common 
mode in which they were committed, and the circumstances surrounding the 
offenses were sufficiently similar to justify admission of the extraneous offense 
evidence on the issue of identity. 
        C. Standard of Review for a Determination Under Rule 403 
        We next review Karnes’s contention that the trial court abused its 
discretion by admitting evidence of the Allen offense because any probative 
value of the evidence was substantially outweighed by its prejudicial effect. If 
a trial court determines that evidence of other crimes or extraneous misconduct 
has relevance aside from character conformity, and a timely, proper rule 403 
objection is made, the trial court must make a balancing determination under 
rule 403. Montgomery, 810 S.W.2d at 388-89. Rule 403 provides that 
"[a]lthough relevant, evidence may be excluded if its probative value is 
substantially outweighed by the danger of unfair prejudice, confusion of the 
issues, or misleading the jury, or by considerations of undue delay, or needless 
presentation of cumulative evidence." Tex. R. Evid. 403. Only "unfair" 
prejudice provides the basis for exclusion of relevant evidence. Montgomery, 
810 S.W.2d at 389. Unfair prejudice arises from evidence that has an undue 
tendency to suggest that a decision be made on an improper basis, commonly 
an emotional one. Id. Rule 403 favors admissibility and a presumption exists 
that relevant evidence will be more probative than prejudicial. Id.; DeLeon v. 
State, 77 S.W.3d 300, 315 (Tex. App.—Austin 2001, pet. ref’d). In evaluating 
the trial court's determination under rule 403, a reviewing court is to reverse 
the trial court's judgment "rarely and only after a clear abuse of discretion," 
recognizing that the trial court is in a superior position to gauge the impact of 
the relevant evidence. Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim. App. 
1999); Montgomery, 810 S.W.2d at 389; Curtis, 89 S.W.3d at 170. 
        The trial court's balancing determination must be measured against the 
relevant criteria by which a rule 403 decision is made. Tex. R. Evid. 403; 
Mozon, 991 S.W.2d at 847. The relevant criteria in determining whether the 
prejudice of an extraneous offense substantially outweighs its probative value 
include: (1) how compellingly the extraneous offense evidence serves to make 
a fact of consequence more or less probable—a factor which is related to the 
strength of the evidence presented by the proponent to show the defendant in 
fact committed the extraneous offense; (2) the potential the other offense 
evidence has to impress the jury "in some irrational but nevertheless indelible 
way"; (3) the time the proponent will need to develop the evidence, during 
which the jury will be distracted from consideration of the indicted offense; and 
(4) the force of the proponent's need for this evidence to prove a fact of 
consequence, that is, does the proponent have other probative evidence 
available to him to help establish this fact, and is this fact related to an issue 
in dispute. Id. (citing Montgomery, 810 S.W.2d at 389-90). When the 
relevant criteria are viewed objectively and lead to the conclusion that the 
danger of unfair prejudice substantially outweighs the probative value of the 
proffered evidence, the appellate court should declare that the trial court erred 
in failing to exclude it. Curtis, 89 S.W.3d at 170 (citing Montgomery, 810 
S.W.2d at 392). 
        D. Rule 403 Balancing Test 
        Karnes argues that the trial court abused its discretion by admitting 
evidence of the Allen offense because the offense was dissimilar to the Garver 
offense, and the prejudicial effect of the Allen offense evidence was 
substantial. He further argues that the State’s need for the Allen offense 
evidence was low because Garver positively identified Karnes as the man who 
robbed her. 
        1. Factor One—Degree of Relevance and Strength of Evidence 
        Applying the rule 403 balancing factors set out in Montgomery, we first 
examine how compelling the Allen offense is to the issue of identity in the 
Garver offense. In performing this review, we also examine the strength of the 
evidence connecting Karnes to the Allen offense. See Montgomery, 810 
S.W.2d at 390. Although Allen could not positively identify Karnes as the man 
who robbed her, the evidence indicates that she was able to accurately describe 
and provide a license plate number for the vehicle. Moreover, due to Allen’s 
report, the police were able to verify Karnes’s ownership of the vehicle. Based 
on the similarity of the vehicle and suspect descriptions and the proximity in 
time and place of the offenses, the police were able to link the offenses and 
provide Garver with a photo-spread, wherein she identified Karnes as her 
assailant.
        Thus, the evidence at trial did tend to connect Karnes to the Allen 
offense. We acknowledge that extraneous offense evidence has an “inherent 
probativeness” by reason of the similarity of the extraneous offense to the 
charged offense. Booker, 103 S.W.3d at 534 (quoting Montgomery, 810 
S.W.2d at 389-90). However, the probative value of the extraneous offense 
evidence was somewhat lessened by differences, including the fact that the 
charged offense was committed by threats while the extraneous offense was 
employed by force. Yet, in both offenses, the assailant drove a white Ford 
truck and robbed lone females in a commercial parking lot. 
        The evidence of the Allen offense must also be given less weight due to 
the State’s identification evidence. As enumerated in Montgomery, “[w]hen the 
proponent has other compelling or undisputed evidence to establish the 
proposition or fact that the extraneous misconduct goes to prove, the 
misconduct evidence will weigh far less than it otherwise might in the 
probative-versus-prejudicial balance." 810 S.W.2d at 390. At trial, Garver 
positively identified Karnes as her assailant, and the State introduced evidence 
of Garver’s prior identification of Karnes in the photo-spread. On the other 
hand, however, during both cross-examination and closing argument, the 
defense rendered identity a disputed issue by repeatedly attacking Garver’s 
ability to properly identify her assailant. Thus, we conclude that the first 
Montgomery factor weighs very slightly in favor of admissibility of the Allen 
offense for the purpose of proving identity in the Garver offense. 
2. Factor Two—Irrational, Indelible Impression
        The second Montgomery factor requires courts to evaluate the potential 
the extraneous offense evidence has to irrationally impress the jury. We are 
mindful that a similar extraneous offense always carries the potential to create 
prejudice in the minds of the jury. Lane, 933 S.W.2d at 520. However, 
according to the Texas Court of Criminal Appeals, the impermissible inference 
of character conformity can be minimized through a limiting instruction to the 
jury. Id. Given the nature of the Allen offense, we cannot conclude that the 
evidence was inherently inflammatory or that it was likely to create such 
prejudice in the minds of the jury that it would have been unable to limit its 
consideration of the Allen offense evidence to its proper purpose. See Taylor, 
920 S.W.2d at 323; Montgomery, 810 S.W.2d at 397. Accordingly, we hold 
that the second factor weighs in favor of admissibility of the Allen offense. 
        3. Factor Three—Time Needed 
        The third factor, the time the proponent needs to develop the extraneous 
offense, during which the jury is distracted from consideration of the charged 
offense, also weighs in favor of the admissibility of the Allen offense. Our 
review of the record reveals that the State spent a relatively short length of 
time presenting evidence of the Allen offense. Evidence of the Allen offense 
was limited to a factual synopsis of the offense and an explanation as to how 
Karnes was identified as a subject in the Garver offense based upon information 
received by Allen. Although the guilt-innocence portion of the trial lasted only 
approximately half of one day, the State spent the majority of its time proving 
the Garver offense. See Booker, 103 S.W.3d at 536 (noting third Montgomery 
factor weighed in favor of admitting extraneous offense when trial time spent 
proving extraneous offense was less than time spent proving charged offense). 
The third Montgomery factor weighs in favor of admissibility of the Allen 
offense.
        4. Factor Four—State's Need 
        Finally, we consider the fourth Montgomery factor, the State’s need for 
the extraneous offense evidence. The State may not introduce extraneous 
offenses as circumstantial evidence of an element in its case-in-chief if that 
element can readily be inferred from other uncontested evidence. DeLeon, 77 
S.W.3d at 312 (citing Clark v. State, 726 S.W.2d 120, 122 (Tex. Crim. App. 
1986)). However, when identity is “a hotly contested issue,” the State’s need 
to offer evidence of an extraneous offense is strong. See Lane, 933 S.W.2d 
at 520-21. 
        At trial, identity was the seminal issue in dispute and the crutch of 
Karnes’s defense. For example, although Garver had positively identified 
Karnes as her assailant in the photo-spread, the defense attacked her 
identification during cross-examination by questioning her ability to properly 
identify her assailant. Further, during closing arguments, the defense vigorously 
contested whether Karnes was proven to be Garver’s assailant beyond a 
reasonable doubt. Moreover, the evidence regarding the Allen offense was 
interrelated to the Garver offense because it demonstrated how Karnes was 
identified as a suspect. Thus, we conclude that the fourth Montgomery factor 
weighs heavily in favor of admissibility of the Allen offense. 
        Our review of the record and the relevant criteria under rule 403 
demonstrates that the probative value of the Allen offense evidence was not 
substantially outweighed by its prejudicial impact. Consequently, we hold that 
the trial court did not abuse its discretion in admitting evidence of the Allen 
extraneous offense. See Montgomery, 810 S.W.2d at 392-93. Having 
determined that evidence of the Allen offense was relevant to the issue of 
identity in the charged offense and that the probative value was not 
substantially outweighed by its prejudicial effect, we overrule Karnes’s first 
point. IV. Extraneous Offense Victim-Impact Evidence 
        In his second point, Karnes argues that the trial court erred by admitting 
extraneous offense victim-impact evidence at the punishment phase of trial. 
He maintains that the victim-impact evidence was extremely prejudicial because 
it constituted a significant portion of the State’s evidence during the 
punishment phase of trial. He further contends that the trial court’s instruction 
to disregard was insufficient to cure the harm already procured by the evidence. 
        A. Error Analysis 
        A trial court has broad discretion in determining the admissibility of 
evidence presented at the punishment phase of trial. See Moreno v. State, 1 
S.W.3d 846, 861 (Tex. App.—Corpus Christi 1999, pet. ref'd). Moreover, the 
Texas Code of Criminal Procedure permits the introduction of evidence on any 
matter the trial court deems relevant to sentencing, including evidence of other 
crimes or bad acts. See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) 
(Vernon Supp. 2003). However, victim impact testimony regarding extraneous 
crimes is inadmissible during the punishment phase of trial. See Cantu v. State, 
939 S.W.2d 627, 637 (Tex. Crim. App.), cert. denied, 522 U.S. 994 (1997). 
 Victim-impact testimony based on an extraneous offense is irrelevant, unduly 
prejudicial, and potentially damaging to a defendant’s right to receive a fair 
punishment hearing. See Boston v. State, 965 S.W.2d 546, 550 (Tex. 
App.—Houston [14th Dist.] 1997, no pet.). Therefore, victim-impact testimony 
is limited to the victim named in the indictment. See Cantu, 939 S.W.2d at 
637.
        Karnes complains that the trial court erred by permitting victim-impact 
testimony from three witnesses who were called to testify regarding prior 
crimes or acts of misconduct. During the punishment phase of trial, the State 
called Nora Villegas (“Villegas”) to testify about an extraneous offense that 
occurred two days prior to the Garver offense. Villegas testified that upon 
parking in a parking lot of a K-Mart in Arlington, Texas, she was approached by 
Karnes after he exited a white truck that was parked behind her. She described 
how Karnes had wedged his body between her open car door, threatened her 
with violence, and demanded her wallet. The State then asked Villegas how 
the event affected her life, wherein she responded that, since the robbery, she 
is scared anytime she parks her car at a store, and she always feels like 
someone is going to approach her. She also testified that she was scared at 
the time of the robbery because she was pregnant and that she moved away 
from the area the next day. 
        During the entire course of Villegas’s testimony, the defense made no 
objection that her testimony constituted impermissible victim-impact testimony. 
Instead, the defense objected only that Villegas’s testimony was irrelevant, 
highly prejudicial, and below the threshold requirement of admissibility. 
Therefore, although Karnes challenges Villegas’s testimony as inadmissible 
victim-impact testimony, we conclude that Karnes has failed to preserve any 
error regarding its admission because the objection at trial does not comport 
with the complaint raised on appeal. See Ibarra v. State, 11 S.W.3d 189, 197 
(Tex. Crim. App. 1999), cert. denied, 531 U.S. 828 (2000). 
        Karnes also complains that the trial court erred by allowing victim-impact 
testimony from two of the State’s other witnesses, Judy Allen and Rizla Kay 
Barmore
 

 (“Barmore”). Prior to the development of Allen’s testimony, Karnes 
conceded that Allen could testify to the extraneous offense; however, he
lodged his objection to any victim-impact evidence based on the offense,
contending such evidence was irrelevant. The trial court overruled Karnes’s
objection, and thereafter, Allen testified that she had sustained numerous
physical injuries and would need knee surgery as a result of the extraneous
offense. She further testified that since the incident she had suffered from
nightmares and had constantly thought about lying on her back in the parking
lot and the tire coming dangerously close to her head. Karnes objected to the
admission of extraneous offense victim-impact evidence during the testimony
of Barmore, as well. After the trial court overruled his objection, Barmore
testified that she frequently had nightmares as a result of the robbery and
thereafter became too scared to work for convenience stores, despite having
done so for approximately twenty years.
        After reviewing the record, we conclude that the trial court erred by 
permitting victim-impact testimony from both Allen and Barmore. 
        B. Harm Analysis. 
        Having found error, we must conduct a harm analysis to determine 
whether the error calls for reversal of the judgment. Tex. R. App. P. 44.2. If 
the error is constitutional, we apply rule 44.2(a) and reverse unless we 
determine beyond a reasonable doubt that the error did not contribute to 
appellant’s conviction or punishment. Tex. R. App. P. 44.2(a). Otherwise, we 
apply rule 44.2(b) and disregard the error if it does not affect the appellant’s 
substantial rights. Tex. R. App. P. 44.2(b); see Mosley v. State, 983 S.W.2d 
249, 259 (Tex. Crim. App. 1998) (op. on reh’g), cert. denied, 526 U.S. 1070 
(1999); Coggeshall v. State, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 
1998, pet. ref’d) (en banc). 
        Constitutional error is "an error that directly offends the United States 
Constitution or the Texas Constitution without regard to any statute or rule that 
might also apply." Alford v. State, 22 S.W.3d 669, 673 (Tex. App.—Fort 
Worth 2000, pet. ref'd). Constitutional error is only present when a ruling is 
constitutionally required; however, mere misapplication of the rules of evidence 
is not constitutional error. Id. Thus, erroneously admitted victim-impact 
evidence does not amount to constitutional error. Lindsay v. State, 102 
S.W.3d 223, 228 (Tex. App.—Houston [14th Dist.] 2003, pet. filed). 
        Because we determine that the error is not constitutional, rule 44.2(b) is 
applicable. Therefore, we are to disregard the error unless it affected 
appellant’s substantial rights. Tex. R. App. P. 44.2(b). A substantial right is 
affected when the error had a substantial and injurious effect or influence on
the jury’s verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)
(citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253
(1946)); Coggeshall, 961 S.W.2d at 643. In making this determination, we
review the record as a whole. Kotteakos, 328 U.S. at 764-65, 66 S. Ct. at
1248.
        In the present case, several factors are present that, when considered 
together, prevent this error from being a violation of Karnes’s substantial rights. 
For example, prior to the presentation of his case, Karnes again objected to the 
extraneous offense victim-impact testimony by Villegas, Allen, and Barmore. 
The trial court sustained Karnes’s objection, instructed the jury to disregard all 
victim-impact evidence not related to the Garver offense, and polled the jury to 
affirm each person’s ability to follow the curative instruction. 
        As a general rule, error in admitting improper evidence may be corrected 
by a withdrawal of the evidence and an instruction to disregard, except in 
extreme cases where it appears that the evidence is clearly calculated to 
inflame the minds of the jury and is of such character as to suggest the 
impossibility of withdrawing the impression produced on their minds. Waldo v. 
State, 746 S.W.2d 750, 752 (Tex. Crim. App. 1988). The effectiveness of 
curative instructions is determined on a case-by-case basis. See Swallow v. 
State, 829 S.W.2d 223, 227 (Tex. Crim. App. 1992). However, we must 
presume that the jury followed the trial court's instructions, absent any indicia 
to the contrary. Colburn v. State, 966 S.W.2d 511, 520 (Tex. Crim. App. 
1998). In reviewing the record, we have found no indication that the trial 
court’s instruction to disregard was insufficient to cure the harm procured by 
the extraneous offense victim-impact testimony. In fact, the trial court 
specifically polled the jury to ensure that the jury was able to disregard the 
evidence in determining Karnes’s punishment. 
        The record also demonstrates that the victim-impact testimony comprised 
only a small portion of the evidence at the punishment phase of trial and that 
the jury was presented with other evidence in order to assess the proper 
punishment for Karnes. The jury heard victim-impact testimony from Garver 
about the changes in her life as a result of the robbery. 
 

 Officer Ted Eby of the 
Arlington Police Department testified that, approximately two weeks before the
Garver offense, he arrested Karnes for shoplifting at a Wal-Mart Supercenter
and found him in possession of an illegal switchblade. The jury also knew about
Karnes two prior felony convictions, as well as the other extraneous offenses
testified to at sentencing.
        Additionally, we see nothing in the record which indicates that the State 
unduly emphasized the victim-impact testimony. During closing argument, the 
State focused on Karnes’s numerous convictions and acts of misconduct 
throughout the years, but did not mention the impact the crimes had on the 
victim’s lives. The only reference to the victim-impact evidence was a brief 
reminder to the jury of the injuries that Allen had sustained as a result of the 
extraneous offense. Moreover, despite the evidence of his prior convictions and 
misconduct, the jury assessed a mid-range punishment: a fifty-five year 
sentence out of a range of twenty-five years to ninety-nine years. 
        Under these circumstances, 
 we conclude that, in the context of the entire 
case against Karnes, the trial court’s error in admitting extraneous offense 
victim-impact evidence did not have a substantial or injurious effect on the 
jury’s verdict and did not affect appellant’s substantial rights. See King, 953 
S.W.2d at 271. Thus, we disregard the error. See Tex. R. App. P. 44.2(b). 
Accordingly, we overrule Karnes’s second point. 
V. Conclusion
        Having overruled Karnes’s two points, we affirm the trial court’s 
judgment.
 
                                                  SUE WALKER 
                                                  JUSTICE
 
PANEL F:   HOLMAN, GARDNER, and WALKER, JJ. 
 
PUBLISH
 
DELIVERED: October 30, 2003