**Elkie Lee TAYLOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 71949.

Court of Criminal Appeals of Texas.

April 24, 1996.

Louis E. Sturns, Arlington, Wayne F. Salvant, Fort Worth, for appellant.

Betty Marshall, Danielle LeGault, Asst. Dist. Attys., Fort Worth, Robert A. Huttash, State's Atty., Austin, for State.

## OPINION

KELLER, Judge.

In June 1994, appellant was convicted of capital murder under Texas Penal Code 19.03(a)(2). The offense, murder in the course of robbery, was committed in April of 1993. The trial court submitted to the jury

the special issues set out in Article 37.071, subsections 2(b)(1), 2(b)(2), and 2(e) of the Texas Code of Criminal Procedure.[1] In accordance with the jury's answers to those issues, the trial court assessed appellant's punishment at death. Article 37.071(h) provides direct appeal to this Court. Appellant raises twenty-four points of error. We will affirm.

## 1. SUMMARY OF THE FACTS

On April 2, 1993, Mary Carson saw appellant and Darryl Birdow leaving the home of her friend, Otis Flake. Carson went inside and discovered Flake dead. His hands were tied behind his back with a length of white plastic tubing, his feet were tied with a coat hanger, a white piece of cloth had been tied around his neck, and he had been strangled with two coat hangers twisted around his neck from behind.

## 2. EXTRANEOUS OFFENSE ISSUES

In points of error one, two and four appellant claims the trial court erred in admitting during the guilt/innocence phase, over objection, evidence of an extraneous offense. Appellant contends the evidence of a separate murder which took place on March 22, 1993, was not relevant to a material issue in this case. Alternatively, appellant argues that even if relevant, the prejudicial effect of the evidence outweighs its probative value.

■ "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." TEX.R.CRIM. EVID. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex.Crim.App.1990) (op. on reh'g). However, extraneous offense evidence may be admissible when relevant to prove an elemental fact or an evidentiary fact of consequence to the determination of the action. *Vernon v. State*, 841 S.W.2d 407, 411 (Tex.Crim.App.1992); *Montgomery*, 810 S.W.2d at 387–388. For instance, Rule

404(b) provides that such evidence may be admitted for the purpose of proving motive, identity, intent, opportunity, preparation, plan or absence of mistake.

### a. Evidence of Previous Murder I.R. 404(b): Admissibility for other purposes

■ In point of error one, Appellant claims that the trial court erred in admitting evidence of a murder which took place ten days prior to Flake's murder. On March 22, 1993, an elderly man named Ramon Carillo was robbed and murdered in his home. This offense occurred on Flake's street, a few blocks from his house. Carillo's death was caused by ligature strangulation with an untwisted coat hanger.

Police apprehended appellant subsequent to Flake's murder. Appellant gave a statement admitting his involvement in that offense. In it he maintained that he and Darryl Birdow went to Flake's house, where both took part in tying and robbing their victim. Appellant, however, did not accept responsibility for the strangulation of the victim. He claimed in his statement that prior to leaving the victim's home, Birdow instructed appellant to wait by the door while he went to turn off lights in the house.[2] According to appellant, the victim was in his bedroom at this point, tied and gagged, but still alive. Appellant said Birdow went back into the victim's bedroom for five or ten minutes. He claimed that when Birdow emerged from the room he told appellant, "eyes don't see, ears don't hear". Appellant claims in his statement that he did not know of Birdow's intention to murder the deceased until it was too late.

Appellant also gave a statement to the police admitting his involvement in the murder of Carillo. As he had in his statement regarding the Flake murder, appellant placed responsibility for the strangulation of the victim on Darryl Birdow. Appellant ob-

---

1. All references to Articles are to the Texas Code of Criminal Procedure unless otherwise provided.

2. In his original statement, appellant wrote, "I tied his mouth up and then tied his hands and feet up." After signing that statement appellant

was allowed to make corrections. He scratched out the word "I" in the above sentence and substituted another word beginning with "DA" and ending with "LL". The middle of the word was cut out by the police detective's hole-punch.

jected to the admission of the statement regarding the Carillo murder, and to testimony concerning his involvement in that offense. At trial, the judge gave an instruction limiting the jury's consideration of the extraneous offense evidence to determining motive, intent, or identity, or to rebut the defensive theory that appellant's accomplice had murdered Flake.

Two witnesses who were with appellant on the nights of both murders testified that appellant admitted to killing both victims. Lucille and May Hardaway, admitted prostitutes and crack users, testified that appellant bragged to them about the murders, explaining in detail how and why he strangled each man with a coat hanger. They testified that on March 22, appellant came to their apartment and told them he had robbed and killed a Mexican man. Appellant said he decided to kill the man because he had looked at appellant's face. He told them that he choked the man and then strangled him with a coat hanger. Several days later, appellant returned to their apartment with news of yet another murder, this time of Otis Flake. Again he maintained that he had personally strangled the victim with a coat hanger while his accomplice, Darryl, "watched out."

### (1) Intent

The murders of Carillo and Flake were virtually identical. Appellant's involvement in an identical offense just ten days before the murder in the present case is relevant to show his intent to cause Flake's death, or at least that he knew that Flake would be killed. The evidence of the Carillo murder was thus relevant to show intent.

### (2) Identity

■ The Hardaways' testimony concerning appellant's detailed description of the method by which he murdered Carillo is admissible to prove appellant's identity as the actual killer. *See Owens v. State*, 827 S.W.2d 911, 916 (Tex.Crim.App.1992); *Boutwell v. State*, 719 S.W.2d 164, 180 (Tex.Crim. App.1985) (op. on reh'g.). When an extraneous offense is offered to prove identity, the common characteristics or the device used in each offense must be so unusual and distinc-

tive as to be like a "signature." *Owens,* 827 S.W.2d at 915; *Collazo v. State,* 623 S.W.2d 647, 648 (Tex.Crim.App.1981).

Both elderly victims were found with some cloth and a wire coat hanger wrapped around their necks. In the case at bar, the victim's feet were also bound with a wire coat hanger. This particular method of murder was sufficiently distinctive to be a "signature crime" and thus this testimony was admissible for the purpose of proving that appellant, rather than his accomplice, was responsible for strangling Otis Flake.

### (3) Motive

The evidence was also relevant to show motive. Appellant told the Hardaways that he killed Carillo because he looked at appellant's face. The testimony regarding Carillo's murder thus reveals a motive for Flake's murder.

### (4) Rebuttal of defensive theory

The evidence was also relevant as tending to rebut a defensive theory. Appellant's statement to the police regarding Flake's murder indicated that he neither killed Flake nor knew Birdow would kill him. Testimony regarding the Carillo murder and appellant's statement to the Hardaways rebuts the theory of limited knowledge and involvement.

Point of error one is overruled.

## II.  R. 403:  Probative vs. prejudicial value

■ Once it is found that an extraneous offense is relevant, a trial court must determine if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Montgomery,* 810 S.W.2d at 389. In making this determination the trial court should consider: 1) whether the ultimate issue was seriously contested by the opponent of the evidence; 2) whether the State had other convincing evidence to establish the ultimate issue to which the disputed evidence was relevant; 3) the compelling nature, or lack thereof, of the evidence; and 4) the likelihood that the evidence was of such a nature as to impair the efficacy of a limiting instruction. *Id.* at 392–393.

First, appellant's identity as the actual killer and his intent were hotly contested issues at trial.

Second, without evidence of appellant's involvement in the Carillo murder, it would have been more difficult for a jury to determine whether appellant anticipated or intended the murder of Otis Flake.

Third, the Hardaways' testimony that appellant admitted to strangling Flake was the only evidence rebutting appellant's claim that, without his knowledge, Birdow had done the killing. The Hardaways were crack-smoking prostitutes, thus vulnerable to at least some degree to attacks on their credibility. These circumstances render testimony regarding the previous murder more crucial to the State's case.

Fourth, the first murder, being no more heinous than the second, was not likely to create such prejudice in the minds of the jury that it would have been unable to limit its consideration of the evidence to its proper purpose.

And finally, the extreme degree of similarity between the two murders renders evidence of the first murder highly probative.

Given the questionable character of the two key witnesses, and the fact that appellant maintained that he had. no intention of killing Flake, we find that the trial court's admission of this evidence was not outside the zone of reasonable disagreement. *See Montgomery*, 810 S.W.2d at 391. Point of error two is overruled.

### b. *Limiting Instruction*

In point of error four appellant complains that the trial court's limiting instruction on the admission of extraneous offense evidence was impermissibly broad because it named four purposes for the admission of the evidence (intent, identity, motive, and rebuttal of defensive theory), instead of one. Appellant argues, correctly, that when a limiting instruction is given, the trial judge, upon request, should instruct the jury that the evidence is limited to whatever specific purpose the proponent advocated. *See McFarland v. State*, 845 S.W.2d 824, 837 (Tex.Crim.App.1992) *cert.*

*denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

Appellant cites no authority for the proposition that extraneous offense evidence may only be admitted for a single purpose. Extraneous offense evidence may be relevant to more than one issue. *See, e.g., Smith v. State*, 898 S.W.2d 838 (Tex.Crim.App.) (plurality opinion), *cert. denied* — U.S. ——, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995). Further, the cases upon which appellant relies hold only that it is error to fail to give *any* limiting instruction, and that it is error to instruct the jury to consider the extraneous offenses only for the purpose of impeaching the credibility of the accused. As discussed above, evidence of the extraneous offense in the present case was relevant to motive, intent, identity, and rebuttal of defensive theory. It was proper for the trial court to include more than one purpose in its instruction. Point of error four is overruled.

The judgment of the trial court is affirmed.

CLINTON and OVERSTREET, JJ., concur in the result.

BAIRD, J., joins only the judgment of the Court for the reasons stated in *Matamoros v. State*, 901 S.W.2d 470, 479 (Tex.Cr.App.1995) (Baird, J., concurring).