COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




SONNY DALE MOORE,


 Appellant,


v.



THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-03-00115-CR



Appeal from the


83rd Judicial District Court


of Pecos County, Texas 


(TC# 2567) 



O P I N I O N O N R E M A N D


 Sonny Dale Moore appeals his conviction for the offense of capital murder. The jury
found Appellant guilty and the trial court assessed punishment at life imprisonment in the
Institutional Division of the Texas Department of Criminal Justice. On original submission, we
reversed the trial court's judgment and remanded the case to the trial court for further
proceedings after finding the trial court erred in failing to sever Appellant's trial from that of
codefendant Veronica Qualley. See Moore v. State, No. 08-03-00115-CR, 2004 WL 2406570 at
*3-4 (Tex.App.--El Paso Oct. 21, 2004, pet. granted)(not designated for publication), rev'd by
Qualley v. State, 206 S.W.3d 624 (Tex.Crim.App. 2006). The Court of Criminal Appeals
granted the State's petition for discretionary review and in its Qualley opinion, adopted the U.S.
Supreme Court's reasoning in Zafiro v. United States, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d
317 (1993), and set out the appropriate review regarding a claim of antagonistic defenses as a
basis for severance and subsequently overruled Appellant's contentions that severance was
required in this case. See Qualley, 206 S.W.3d at 636-39. The Court reversed our judgment and
remanded the case with instructions to address Appellant's remaining issues. See id. at 639. 
After reviewing and overruling Appellant's two remaining issues, we affirm the trial court's
judgment.

 Appellant did not contest the sufficiency of the evidence relating to his conviction. 

In our prior opinion, we summarized the facts as follows:

 On December 26, 2001, Appellant and his codefendant, Veronica Qualley, entered
Charlie's Pawn Shop on the Andrews Highway in Odessa, Texas. They had a small child with
them. The manager of the shop, Rhonda Dolloff, testified that the child's eyes were blackened,
and it appeared that she had a broken nose. She appeared swollen and bruised, and there was
bruising between her fingers. It seemed to Dolloff that the child could not turn her head and she
had difficulty raising her arm. The child had a drugged and spacey look to her face. After about
forty minutes, as the three left the shop it appeared that the child's legs would not work.

 On December 28, 2001, the couple returned to the pawn shop with the child. Diana
Salas, an employee, saw bruising on the child's face, hands, and side. The child's eyes were
blackened, she had bruising on her stomach and she acted in a sluggish manner. Rhonda Dolloff
was also in the store. Appellant was trying to sell some firearms. Dolloff asked Qualley about
the child's injuries and Qualley stated that the child had fallen out of a window. When the three
left the store, the employees called police.

 Cliff Harris, the Sheriff of Pecos County, Texas, testified that on December 28, 2001, he
received a call from a pawn shop owner in Odessa regarding an injured child. He sent a deputy
to look for a pickup truck coming from Odessa. Deputy Jerry Kresta stated that he was told to
look for a 1986 Ford pickup. He watched for the vehicle for approximately three hours to no
avail.

 On January 3, 2002, Adam Marquez was working the dispatch desk at the Fort Stockton
Police Department. He received an emergency 911 call from Sonny Dale Moore at 10:11 p.m. 
Appellant stated that a child had fallen out of bed and was unconscious. Mike Laurence, an
EMT, heard the call and responded to the scene. Upon arrival, he found that the child had no
pulse and her lips were blue.

 Ilan Wilde testified that he is a physician's assistant at Pecos County Memorial Hospital. 
On January 3, 2002, at 10:30 p.m., an ambulance arrived carrying a child. She was not breathing
and she had no heartbeat. She had multiple bruises around her eyes, legs, and knees. Appellant
and Qualley told him that the child had fallen out of the bed the night before, had fallen down
some stairs, and had fallen over a toy box.

 Toni Proper, a respiratory therapist, was also working at the hospital when the child
arrived. The child's name was Whisper Lynd. Proper was in charge of managing the child's
airway. The witness noticed recent bruising on the child's forehead and other bruising on her
body.

 Oscar Gallegos, a sheriff's deputy with the Pecos County Sheriff's Office, stated that he
prepared a diagram of Appellant's residence where the child died. He took a measurement that
indicated the child's bed was nineteen inches above a carpeted floor.

 Dr. Jerry Spencer testified that he was a pathologist in Lubbock County, Texas. He
performed an autopsy on a child named Whisper Lynd on January 4, 2002. He described major
injuries to her head, mouth, abdomen, and arm. The head injury was the fatal injury. The
injuries were both recent and older healing injuries. Her lower front teeth had been knocked out
and had healed over. This injury occurred about three or four weeks before her death. Her arm
was recently broken and her elbow was dislocated. The abdominal injuries were the result of
blunt trauma from a fist or from a kick. It was one of the worst such cases he had ever seen.

 Billy McGovern testified that he was Appellant's and Veronica Qualley's landlord. He
had become friendly with Appellant and he lived nearby. He knew the victim and he noticed on
one occasion that the child had a black eye. On another occasion, he saw the victim had a busted
lip. He also observed that the child's hair had disappeared. Upon inquiry, he was told that the
child was pulling her hair out. He warned Appellant and Qualley that he would inform Child
Protective Services if he saw any more bruises on the child.

 Tulon Murphy, a deputy sheriff with the Pecos County Sheriff's Office, testified that he
took a confession from Appellant wherein he admitted killing the child. Appellant stated that he
lost his temper when he found the child out of her bed. He stated that he frequently lost his
temper in that manner. He grabbed her by both arms and threw her on the bed real hard. She
bounced off of the bed and he grabbed her by the throat. He then grabbed her by the neck and
threw her back on the bed very hard. He was still very angry. He noticed that the child was
having a hard time breathing. Appellant stated that Qualley had nothing to do with the killing.

 Appellant testified in his own behalf. He stated that he did not kill the child and
implicated Qualley, as she was the only other individual in the home at the time of the death.

EXTRANEOUS OFFENSE EVIDENCE

 In Issue Two, Appellant argues the trial court erred in denying him the right to introduce
evidence of an extraneous offense committed by his codefendant Veronica Qualley.

 At trial, Appellant sought to introduce evidence of Ms. Qualley's prior conviction in an
effort to show the similarity of the injury suffered by another child of Ms. Qualley to that of
Whisper Cheyann Lynd. After proffering the evidence, Appellant requested a ruling based on
Tex.R.Evid. 403. For the record, the State in response objected to its admissibility based on
Tex.R.Evid. 402 and Tex.R.Evid. 403. The trial court ruled that the extraneous offense
evidence was inadmissible on relevancy grounds. See Tex.R.Evid. 401. Appellant, however,
claims on appeal that the extraneous offense evidence was admissible under Rule 404(b) to show
intent and was relevant due to the similarity of the injury sustained by Whisper Cheyann Lynd
and the injury to another child of Ms. Qualley.

Standard of Review

 The trial court has wide discretion in deciding whether to admit or exclude evidence of
extraneous offenses. Sauceda v. State, 129 S.W.3d 116, 120 (Tex.Crim.App. 2004);
Montgomery v. State, 810 S.W.2d 372, 390-93 (Tex.Crim.App. 1990)(Opin. on reh'g). We
review the trial court's ruling for an abuse of discretion. Montgomery, 810 S.W.2d at 391. As
long as the trial court's ruling is within the zone of reasonable disagreement, we will not reverse
that ruling. Id.

Admissibility of Extraneous Offense Evidence

 With certain exceptions, extraneous offenses are not admissible to prove the defendant's
character in order to show that the defendant acted in conformity with his character by
committing the charged offense. See Tex.R.Evid. 404(b). (1) In order for an extraneous offense to
be admissible, it must be relevant apart from supporting an inference of character conformity. 
See Montgomery, 810 S.W.2d at 387; Tex.R.Evid. 401. An extraneous offense has
non-character conformity relevance if it has any tendency to make the existence of a fact that is
of consequence to the determination of the action more or less probable than it would be without
the evidence. Tex.R.Evid. 401; Powell v. State, 63 S.W.3d 435, 438 (Tex.Crim.App. 2001). 
Although relevant, extraneous offense evidence may be excluded under Rule 403 "if its probative
value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless presentation of cumulative
evidence." See Tex.R.Evid. 403.

 Here, Appellant sought to introduce evidence that the injuries suffered by another child of
Ms. Qualley, namely, a spiral fracture of the right humerus of her three-month old child in 1995,
was similar to the injuries suffered by Whisper Cheyann Lynd. Even if the extraneous offense
was relevant in that it has any tendency to make the existence of a fact of consequence more or
less probable, it would still be inadmissible under Rule 403 analysis. Relying on the doctrine of
chances-- the instinctive recognition of that logical process which eliminates the element of
innocent intent by multiplying instances of the same result until it is perceived that this element
cannot explain them all-- which was set forth in former case law on the admissibility of
extraneous offenses, Appellant argues that there is a similarity between the charged offense and
the extraneous offense, such that the improbability of a like result being repeated by mere chance
gives the extraneous offense probative weight. See Cantrell v. State, 731 S.W.2d 84, 90
(Tex.Crim.App. 1987); Plante v. State, 692 S.W.2d 487, 491-92 (Tex.Crim.App. 1985).

 While there were some similarities between the injuries that resulted to the other child in
Ms. Qualley's prior conviction, there were stark differences in the result and degree of injury. 
Indeed, the results of the prior conviction were in no way distinctly similar to the charged offense 
as to constitute a "signature" act. See Martin v. State, 173 S.W.3d 463, 468 (Tex.Crim.App. 
2005)(common characteristics must be so similar to the charged offense that the offenses
illustrate defendant's distinctive and idiosyncratic manner of committing criminal acts); Taylor v.
State, 920 S.W.2d 319, 322 (Tex.Crim.App. 1996)(common characteristics of each offense are so
unusual as to act as the defendant's signature). Further the prior conviction occurred more than
six years before the offense for which Ms. Qualley was charged. See Robinson v. State, 701
S.W.2d 895, 898 (Tex.Crim.App. 1985)(closeness in time of extraneous offense to charged
offense is among factors used to measure its probative value). Because the extraneous offense
evidence provided little probative value, but was highly prejudicial, we conclude it was within
the trial court's discretion to exclude the complained-of evidence based on the State's objection
under Rule 403. Issue Two is overruled.

BILL OF EXCEPTION

 In Issue Three, Appellant contends the trial court prevented Appellant from making a bill
of exception. The right to make an offer of proof or perfect a bill of exception is absolute. 
Spence v. State, 758 S.W.2d 597, 599 (Tex.Crim.App. 1988). The record, however, shows that
Appellant did in fact make a bill of exception. Issue Three is overruled.

 We affirm the trial court's judgment.



April 26, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. Tex.R.Evid. 404(b) provides:


 Evidence of other crimes, wrongs or acts is not admissible to prove the character
of a person in order to show action in conformity therewith. It may, however, be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident,
provided that upon timely request by the accused in a criminal case, reasonable
notice is given in advance of trial of intent to introduce in the State's case-in-chief
such evidence other than that arising in the same transaction.


Tex.R.Evid. 404(b).