

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0677-22

**LARRY JEAN HART, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

KEEL, J., filed a dissenting opinion in which KELLER, P.J., and YEARY, J., joined.

### DISSENTING OPINION

I agree with and join Presiding Judge Keller's and Judge Yeary's dissenting opinions.

I raise additional objections to the majority opinion for its distortions of unfair prejudice and probative value and its garbled harm analysis.

## I. Unfair Prejudice

Unfair prejudice means provoking sympathy or hostility "without regard to the logical probative force of the evidence." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). It means luring the factfinder into convicting "on a ground different from proof specific to the offense charged." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). Or it means proving "some adverse fact not properly in issue or [that tends] unfairly to excite emotions against the defendant." *Manning v. State*, 114 S.W.3d 922, 927-28 (Tex. Crim. App. 2003) (quoting *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990) (original op.)).

It means more than casting a negative light on the defendant. *Inthalangsy v. State*, 634 S.W.3d 749, 758 (Tex. Crim. App. 2021). It may mean arousing a sense of horror or provoking an instinct to punish. *U.S. v. Long*, 92 F.4th 481, 488 (3rd Cir. 2024). It generally means evidence of conduct that is more inflammatory than the charged offense. *U.S. v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006). For example, an extraneous murder that was "no more heinous than the [charged murder] was not likely to create such prejudice in the minds of the jury that it would have been unable to limit its consideration of the evidence to its proper purpose." *Taylor v. State*, 920 S.W.2d 319, 323 (Tex. Crim. App. 1996).

The disputed evidence here was not even evidence of a crime. As Appellant testified, "It's just rap, ma'am"—a longstanding, popular music style that has aged out of its shock value and whose fictional nature—like that of most lyrics—is common knowledge. This evidence was too innocuous to provoke a contemporary jury to (a)

convict regardless of the evidence of the crime, (b) disregard the logical probative force of the disputed evidence, or (c) labor under unfairly excited emotions. *See Montgomery*, 810 S.W.2d at 390; *Gonzalez*, 544 S.W.3d at 373; *Manning*, 114 S.W.3d at 927. Nor would it arouse a sense of horror or provoke an instinct to punish. *Long*, 94 F.4th at 488. Compared with the brutal reality of the charged crime—an execution-style killing during a midnight, home invasion—the evidence was not inflammatory. *See Taylor*, 920 S.W.2d at 323; *Paulino*, 445 F.3d at 223.

In an effort to justify its contrary conclusion, the majority departs from Rule 403, asserting, for example, that the rule "excludes otherwise relevant evidence[.]" But it does not exclude relevant evidence; it authorizes its exclusion—the trial court "may" exclude it—only under certain circumstances. The rule presumes relevant evidence is admissible. *Santellan v. State*, 939 S.W.2d 155, 159 (Tex. Crim. App. 1997). It may be excluded if its probative value is "substantially" outweighed—a modifier omitted in the majority's rendition of the test. *See* Tex. Rule Crim. Evid. 403.

Applying its diluted rendition of Rule 403, the majority holds that Appellant's videos were inadmissible "because music can impact a jury in an emotional way." This is not a limiting principle because all relevant evidence has that potential. The majority asserts that "any song that glorifies criminality . . . is inherently prejudicial"—a sweeping assertion that abandons Rule 403's case-by-case approach to balancing probative value against substantial prejudice. The majority says that the videos might be seen "as proof that Appellant engaged in criminal behavior"—but that made them probative, not unduly

prejudicial because they rebutted his naivete defense about criminal intent. If the majority means to say that the videos might be seen as evidence of extraneous, uncharged criminal behavior, then it still is distorting Rule 403 because "might be seen" does not demonstrate that probative value is substantially outweighed by prejudicial effect. The majority asserts that because Appellant was not well known, a "listener cannot disassociate [his rap persona] 'Block Da Foo Foo' from the message." But a fictional persona embodies the creative message, so a listener should not be expected to separate "Block Da Foo Foo" from his message. Maybe the majority means instead that a listener could not distinguish a fictional persona from its obscure performer, an unsupported assertion. Whatever it means, it abandons our usual approaches to prejudicial effect. *See Montgomery*, 810 S.W.2d at 390; *Gonzalez*, 544 S.W.3d at 373; *Manning*, 114 S.W.3d at 927.

## II. Probative Value

The majority maintains that the rap evidence was not probative because it did not represent Appellant's character or was not relevant to the charged offense—a new requirement that abandons the "fact of consequence" standard.

Evidence is probative if it affects the likelihood of a "fact of consequence." *Gonzalez*, 544 S.W.3d at 372. Such facts may be evidentiary or elemental. *Taylor*, 920 S.W.2d at 321. A fact of consequence is one related to a contested issue. *Reese v. State*, 33 S.W.3d 238, 242 (Tex. Crim. App. 2000). And contested issues short of ultimate guilt

may be facts of consequence. *E.g., Casey v. State*, 215 S.W.3d 870, 882 (Tex. Crim. App. 2007).

Here, the disputed evidence rebutted Appellant's aw-shucks self-portrayal; in his telling, he was too naïve to know and believe that his compatriot meant it when he said he wanted to break into someone's home. But such naivete would have been under assault by his avid pursuit of the cynical, "gangsta" rap worldview. It doesn't matter that the lyrics were fiction because fiction instructs on real-world human nature and motivations—that is its superpower. This evidence was probative of a disputed point related to criminal intent—the most consequential fact in this trial, and the majority errs to dismiss it.

## III. Harm Analysis

The majority's harm analysis cites the supposed exclusion of the testimony of the psychiatrist who offered a mid-trial, impromptu opinion about Appellant's competency. The majority suggests that the supposed exclusion was error. It is mistaken for three reasons.

First, the trial court did not exclude the psychiatrist's testimony. Its last word was that it would "cross that bridge" later, a point it never reached as far as the record shows. Second, the majority assumes that the psychiatrist's testimony was admissible. On the contrary, it likely was inadmissible as less-than-insanity, less-than-intent-negating, diminished-capacity evidence. *See Ruffin v. State*, 270 S.W.3d 586, 596 (Tex. Crim. App. 2008). Third, the majority warps the harm analysis by considering evidence the

jury never heard.  It should instead consider what the jury did hear.    *E.g., Haley v. State*, 173 S.W.3d 510, 519 (Tex. Crim. App. 2005).  There is no ground for review about the psychiatrist's unadmitted testimony, and considering it scrambles the harm analysis.

## IV.  Conclusion

The majority opinion is flawed.  It will cause headaches.  I respectfully dissent.


Filed: May 8, 2024

Publish