**Affirmed and Memorandum Opinion filed August 1, 2024.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-22-00921-CR**
**NO. 14-22-00922-CR**

---

**JERMIAH ISSAC GLENN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Cause Nos. 20-CR-1594, 20-CR-1595**

---

## MEMORANDUM OPINION

A jury found appellant Jerimiah Issac Glenn guilty of aggravated robbery and capital murder. Appellant received a sentence of confinement for ninety-nine years for the robbery conviction and an automatic sentence of life imprisonment for the capital murder conviction. *See* Tex. Penal Code §§ 12.31(a)(1), 12.32(a). In a single issue, he contends that the trial court erred by admitting evidence of an extraneous theft. We affirm.

# I.   BACKGROUND

The State indicted appellant for an aggravated robbery against Yeiser Ramirez and for a capital murder predicated on a robbery against Curtis Lee, which occurred later in the same day and less than a mile from the Ramirez robbery.

## A.   Ramirez Robbery

Ramirez testified that around dusk on October 6, 2019, he was loading groceries into a Honda minivan outside a grocery store in Texas City. A young Black man approached and asked for a ride. When Ramirez refused, the man pulled out a revolver, pointed it at Ramirez's face, and demanded Ramirez's keys and phone. The assailant threatened to kill Ramirez. Ramirez complied.

Ramirez testified that he could not see clearly because it was nighttime. He could not remember the color of the revolver but described it as metal or metallic-looking. He admitted that he may have told the police it was a silver revolver. He testified that the assailant was wearing a white hooded jacket with a pocket in the front. He admitted telling the police that the assailant was wearing blue jeans. He identified the assailant on surveillance videos from nearby businesses.

A patrol officer with the Texas City Police Department responded to the scene. He testified that surveillance videos, which were admitted as exhibits, show the assailant wearing a white hooded sweatshirt, black pants with white trim on the sides, and white plastic slide sandals. A screenshot from one of the videos appears below:



A little more than an hour after the officer was dispatched to the robbery, he was dispatched to another scene about five minutes away—less than a mile from the first scene.

## B.    Lee Capital Murder

That evening, Curtis Lee was arriving home at his apartment complex. Lee's live-in girlfriend testified that she heard a loud noise and looked out a window. She saw someone wearing a white hoodie get into the driver's side of Lee's Nissan Maxima. She went to the bottom of the exterior stairway and saw Lee. He had been shot and was later pronounced dead at the scene.

A neighbor testified that her dogs started barking at about 8:20 p.m. She heard a big boom and looked out a window. She saw one person standing and another on the ground. She described the standing person as a young, skinny, Black man wearing dark jeans and a white t-shirt. She testified that the shirt could have had long sleeves pulled up. It was possible the person was wearing a hood. The man was digging through the fallen man's pockets. When the neighbor yelled for the man to stop, he got into a car and drove off.

3

## C.    Crime Scene Processing and Investigation

Police officers did not find any shell casings at the scene of Lee's murder, which was consistent with the use of a revolver. About 250 feet from Lee's body, police found Ramirez's Honda minivan. Later investigation showed appellant's fingerprints on a water bottle collected from the minivan. Testing of a DNA mixture recovered from the minivan's steering wheel was consistent with Glenn being a possible contributor to a DNA mixture—the probability of obtaining this mixture profile to include appellant was 11.8 million times greater than the probability of obtaining the mixture profile with unknown persons.

Lee's Nissan Maxima was found, still running, near the Gulf Breeze Apartments in La Marque. Ramirez's lanyard of keys was found inside the Nissan.

Surveillance video and a license plate reader from Gulf Breeze showed the Nissan entering the parking lot on the night of the murder. An associate of appellant's testified that he let appellant stay the night on October 6. The associate identified appellant in a surveillance video from Gulf Breeze. The video shows appellant wearing a white hoodie, dark pants with white trim on the side, and white slip-on sandals. Several screenshots appear below:



The associate testified that they went through the trunk of the Nissan to retrieve money and weed. The associate testified that he had seen appellant with a gun three days before.

## D.    Appellant's Flight and Capture

On the following day, October 7, a group of detectives went to Gulf Breeze to look for appellant. The detectives spoke with the associate and appellant's brother, among other residents. With help from several residents, the detectives found paperwork with Lee's name on it and a wallet with Lee's identification on the ground near a fence. A detective recovered a light gray hoodie inside a barbecue pit.

A detective arranged for the brother to call appellant, who said he was walking to the apartment. When the detective spotted him, appellant turned and ran. The detective yelled for appellant to not run because the detective just wanted to talk. Appellant responded by climbing over an 8- or 9-foot fence and running

away; he jumped two more fences before getting away. As appellant fled, he lost a pair of white Nike slides or slippers, which officers recovered.

Several officers went to another apartment complex that was nearby. A resident of that apartment complex testified that as he was getting into his car, he saw a young Black man in the back seat of a neighbor's car. The man asked the resident for a ride; the resident declined. The resident was stopped by police officers in the parking lot and directed them to appellant's location. A detective testified that the vehicle's rear door was open, and he saw appellant jump out and run. The detective lost sight of appellant.

The neighbor testified that she was coming down the stairs of the apartment complex towards the detectives when appellant "Spidermaned" down the outside of the railings of the stairs. Appellant held a big, shiny, silver revolver and pointed it at the neighbor. She screamed, "He has a gun." The officers heard the neighbor scream and saw appellant jump down from a level above them. They saw appellant held a gun in his hand. They chased appellant, but appellant jumped a fence and got away. Surveillance video from the apartment complex showed appellant wearing dark pants with white trim on the side:



6

After about an hour or an hour and a half, officers found appellant hiding underneath a nearby house. Appellant surrendered eventually. He was wearing black pants with thick white stripes from the pocket area to the waist. He wasn't wearing any shoes.

Officers found a fully loaded Taurus .357 revolver under the house. DNA testing on the grip of the revolver indicated support for the proposition that appellant was a possible contributor—the probability of the DNA profile coming from appellant was 26.7 sextillion times greater than the probability of obtaining the DNA profile from an unrelated, unknown person.

Because appellant was sixteen years old, he was brought to a Juvenile Justice Center facility. When an intake officer who was familiar with appellant began the intake, appellant told the officer, "I killed somebody with a .357."

## E.     Extraneous Offense

Over appellant's Rule 403 and 404 objections, the trial court admitted evidence of an extraneous offense: four days prior to the Ramirez robbery, appellant stole a truck along with a Taurus .357 revolver and ammunition from within the truck.

Dennis Sizemore testified that on October 2, 2019, he parked his truck and left it running when he went into a store. Inside the truck was a .357 revolver and box of ammunition. When Sizemore left the store, his truck was gone.

A surveillance video shows a young Black man wearing a white hoodie and black pants with white stripes on the sides walk near the truck, and then the truck drives away. A screenshot from the surveillance video appears below:



The truck was found on October 5. The revolver and ammunition were missing. At trial, Sizemore was shown the revolver found near appellant. Sizemore testified, "Sure looks like my gun." He testified that he hadn't done any modifications to his gun, and more than likely someone could find a gun that looked just like it in a Taurus store. He always kept the chamber under the hammer empty to prevent an accidental discharge.

## II.    STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision to admit extraneous offense evidence under Rules 403 and 404 of the Texas Rules of Evidence. *Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022). A trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

## III. RULE 404

As part of his sole issue on appeal, appellant contends that the extraneous offense evidence was inadmissible under Rule 404 of the Texas Rules of Evidence.

### A. Legal Principles

Rule 404(b) prohibits the admission of evidence of a defendant's other crimes, wrongs, or acts to prove bad character and hence conduct in conformity with that character. *See De La Paz v. State*, 279 S.W.3d 336, 342–43 (Tex. Crim. App. 2009) (citing Tex. R. Evid. 404(b)). But, the rule provides that evidence of other crimes, wrongs, or acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2). This list is not exclusive or exhaustive. *De La Paz*, 279 S.W.3d at 343.

"Rule 404(b) is a rule of inclusion rather than exclusion." *Id.* (quotation omitted). "Extraneous-offense evidence is generally admissible if the evidence is relevant to a fact of consequence apart from its tendency to prove character conformity." *Perkins*, 664 S.W.3d at 216. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Tex. R. Evid. 401. Thus, extraneous offense evidence is admissible if it "logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact." *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005).

### B. Application

Appellant concedes that his identity as the perpetrator was at issue in the case. He raised the issue in his opening statement. He cross-examined witnesses

9

regarding inconsistent descriptions of the assailant and, specifically, the gun. He pointed out that officers failed to give eyewitnesses a lineup or photospread to identify appellant before trial.

Generally, evidence showing how a defendant obtained and possessed a gun that was used in the commission of a charged offense is relevant to show identity and to connect the defendant to the charged offense. *See Devoe v. State*, 354 S.W.3d 457, 470–71 (Tex. Crim. App. 2011) (holding that evidence of theft of a gun that was used in later murders was relevant and admissible under Rule 404 as it created more circumstantial evidence to establish the defendant's identity as the murderer); *Ransom v. State*, 920 S.W.2d 288, 300–01 (Tex. Crim. App. 1994) (op. on reh'g) (holding that evidence of the theft of a car and a gun from inside the car was relevant for a non-propensity purpose because it showed ownership of the gun before the murder, thus connecting the defendant to the murder);

Here, the extraneous offense evidence showed how appellant, a sixteen-year-old, obtained the gun; and the evidence made it more likely that appellant was the perpetrator of the charged offenses, which involved the same type of gun. *See Devoe*, 354 S.W.3d at 470–71; *Ransom*, 920 S.W.2d at 300–01; *see also Edwards v. State*, 228 S.W.3d 450, 451–52 (Tex. App.—Amarillo 2007, pet. ref'd) (upholding admission of extraneous burglary, during which the defendant stole a shotgun, because identity was at issue and the gun was used during the charged offense of robbery). Moreover, the extraneous offense evidence showed that appellant had access to ammunition, which provided an explanation for why the gun was fully loaded after being fired during the capital murder.

Because appellant's theft of the gun and ammunition from the truck would make little or no sense without evidence of the theft of the truck itself, evidence about appellant's theft of the truck was admissible as "same transaction contextual

evidence." *See Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (noting that an extraneous offense may be admissible if the instant offense would make little or no sense without also bringing in the same transaction contextual evidence); *see also Devoe*, 354 S.W.3d at 470 (holding that evidence of multiple extraneous offenses, such as theft of a gun from a friend before the murders of others and theft of a stolen truck later observed at a different crime scene, were admissible as contextual evidence).

The trial court's ruling lies within the zone of reasonable disagreement. The court did not abuse its discretion by concluding that the evidence was admissible under Rule 404.

## IV.   RULE 403

Appellant next contends that the extraneous offense evidence was inadmissible under Rule 403 of the Texas Rules of Evidence.

## A.   Legal Principles

Under Rule 403, a trial court may exclude relevant evidence if "the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Perkins*, 664 S.W.3d at 216; *see* Tex. R. Evid. 403. In the face of a Rule 403 objection, courts engage in a balancing test that considers:

(1)   How compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable;

(2)   The potential of the evidence to impress the jury in some irrational but indelible way;

(3)   The time the proponent needs to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and

11

(4) The proponent's need for the evidence.

*Perkins*, 664 S.W.3d at 216.

Rule 403 presumes that relevant evidence will be more probative than prejudicial. *Hernandez v. State*, 390 S.W.3d 310, 323 (Tex. Crim. App. 2012). "Unfair prejudice refers to the evidence's 'tendency to tempt the jury into finding guilt on grounds apart from the proof of the offense charged.'" *Perkins*, 664 S.W.3d at 216 (quoting *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005)). All evidence is prejudicial to one party or the other. *Hernandez*, 390 S.W.3d at 324. It is only when there is a "clear disparity" between the degree of prejudice and probative value that Rule 403 authorizes exclusion. *Id.*

## B. Relevance and State's Need

The first and fourth factors consider the degree of the evidence's relevancy and how important the evidence is in light of the remainder of the evidence.

We agree with appellant's admission on appeal that "the evidence of the truck theft makes [appellant]'s guilt more probable because he was in possession of the same model of gun." Appellant contends further, however, that this evidence was not compelling because the revolver stolen from the truck could not be linked definitively to the one found with appellant under the house. He also contends that it was "undisputed" he possessed a gun, so the State had no need to show the source of the gun.

As noted above, appellant challenged his identity in part based on cross-examination of the witnesses' and their varying descriptions of the gun they saw during the Ramirez robbery and when appellant fled. Thus, it was important for the State to show that appellant had access to the same type of gun *before* the robbery and murder. *See Ransom*, 920 S.W.2d at 301 (evidence of extraneous theft

12

of a car and a gun from within the car was admissible under Rule 403 because, "[W]hile the evidence showed that appellant possessed and admitted ownership of the .44 Ruger after the murder, at the time it was recovered by the police, the trial court could reasonably have concluded that the question of appellant's ownership of the gun at the time of the murder was still in dispute").

Although appellant's associate testified that appellant had a gun before the robbery and murder, there was no evidence other than the extraneous offense evidence to show that appellant possessed (1) a revolver like the one used during the later crimes; (2) "a .357" like the one appellant admitted to using during the murder; and (3) specifically, a Taurus .357 revolver like the one recovered from under the house. Similarly, evidence of the theft of ammunition helped explain why the gun was recovered fully loaded although the State alleged it had been fired to kill Lee.

Although evidence of appellant's guilt was significant regardless of the extraneous offense, these factors still moderately favor admission. *See id.*

## C. Time and Unfair Prejudice

The second and third factors consider the degree of unfair prejudice and distracting nature of the extraneous offense evidence.

We agree with appellant's admission on appeal that "[t]he amount of time needed to develop the evidence was minimal: three witnesses, comprising 27 pages of the transcript." The State notes that there were twenty-eight witnesses in total with more than 500 pages in the reporter's record for the State's witnesses' testimony.

The Court of Criminal Appeals has "consistently acknowledged that the introduction of extraneous offenses to the jury is inherently 'prejudicial,' and

13

hence, harms the defendant, because it requires the defendant to defend against not only the offense charged but also his uncharged actions." *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994) (citation omitted). And, such evidence prejudices a defendant "because of the jury's natural inclination to infer guilt to the charged offense from the extraneous offenses." *Id.*

But, under a Rule 403 analysis, courts routinely allow the admission of an extraneous offense when it is of a character that "pales in comparison to the primary offense," *see Ransom*, 920 S.W.2d at 301 (burglary of a motor vehicle vs. murder), or is "no more heinous" than the charged offense, *see Taylor v. State*, 920 S.W.2d 319, 323 (Tex. Crim. App. 1996) (both murder). Under these circumstances, the extraneous offense evidence is "not likely to create such prejudice in the minds of the jury that it would have been unable to limit its consideration of the evidence to its proper purpose." *Grant v. State*, 475 S.W.3d 409, 421 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (both aggravated sexual assault and kidnapping).

Here, evidence of the theft of a truck that was left running in a parking lot and its contents "pales in comparison" to the aggravated robbery of Ramirez and capital murder of Lee. *See Ransom*, 920 S.W.2d at 301. The trial court "was justified in concluding that the jury would not be swayed to convict appellant of capital murder on the basis of the comparatively minor offense" of theft of the truck. *See id.*

These factors favor admission.

**D.   No Error**

The relevancy of the extraneous offense evidence and the State's need for it were moderate, but it took little time to be presented to the jury, and it was not

particularly prejudicial. On balance, the factors favor admission. The trial court did not act outside the zone of reasonable disagreement by concluding that the probative value was not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. The court did not abuse its discretion by admitting the evidence over appellant's Rule 403 objection.

## V. CONCLUSION

Appellant's sole issue on appeal is overruled. The trial court's judgment is affirmed.

/s/ Ken Wise
   Justice

Panel consists of Chief Justice Christopher and Justices Wise and Jewell.

Do Not Publish — Tex. R. App. P. 47.2(b)