**Modified and Affirmed and Opinion Filed May 24, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00087-CR

**EDGAR CORTEZ CARDENAS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F19-76997-S**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Partida-Kipness, and Justice Breedlove
Opinion by Justice Breedlove

A jury found appellant Edgar Cortez Cardenas guilty of murder and assessed his punishment at 30 years' imprisonment. In three issues, appellant contends the evidence is legally insufficient to support the jury's verdict and that the trial court erred by admitting evidence of extraneous offenses and social media evidence. In a cross-issue, the State requests that we reform the judgment to correct certain errors. We modify the judgment and affirm as modified.

BACKGROUND

Nadaly Salmon, age 18, was fatally shot at the California Crossing Park in Dallas on November 17, 2019. Appellant was indicted for Salmon's murder and the case proceeded to a jury trial. During the first phase of the trial, the State offered testimony from thirteen witnesses about the murder and the subsequent investigation.

The State offered evidence that Salmon was sitting in the back seat of a parked car at the time of her death. Salmon's boyfriend Jonathan Rosales was in the front seat of the car on the passenger side. He survived the shooting and testified at trial, but was not able to provide information about the perpetrators' identity. He did, however, testify that the perpetrators arrived at the park in a Chevrolet Tahoe.

Police investigators found numerous shell casings at the scene, including 45 .223 caliber casings and 28 .45 caliber casings. Although the bullet fragments retrieved from Salmon's body had insufficient markings to match them with a specific weapon, a firearm and toolmark examiner testified at trial that they were consistent with a .223 caliber cartridge.

Three hours after the shooting, police stopped a black Chevrolet Silverado pickup truck after a drive-by shooting on Grafton Road in Dallas. Four people including appellant were in the truck. Appellant was wearing a bulletproof vest. Subsequent testing revealed gunshot residue on his hands. Police found weapons in the truck including a .223 caliber AR-style rifle and a .45 caliber handgun. Ballistics

testing later matched these weapons to shell casings found at California Crossing Park and at the Grafton Road crime scene.

In the days preceding Salmon's death and on the night of the murder, appellant communicated through social media with one of the other occupants of the Silverado, Oscar Reyes. On November 5, appellant sent a message to Reyes stating, "You got the gun? I want to shoot somebody." Reyes replied "Yes." Two days later, appellant messaged "Let's go shoot" to Reyes. That message was also sent to Heyby Cardenas, appellant's brother, who was also in the Silverado on the night of the murder. Reyes replied, "Where?" and Heyby[1] responded "Anywhere."

On the night of the murder, appellant and Reyes communicated on a thread containing videos of a handgun and a rifle similar to those used in the shootings. They also communicated about appellant picking up Reyes at his home. After appellant told Reyes "I'm pulling up" and to "come outside," the communications stopped for 14 hours. On the day after the murder, Reyes posted a photograph of a Tahoe for sale.

Geolocation data from appellant's and Reyes's phones indicated that both phones were in the area of the California Crossing Park at the time of Salmon's murder and in the area of Grafton Road at the time of the shooting there. Both phones were in the area of the Silverado at the time it was stopped by police.

---

[1] We refer to appellant's brother by his first name for clarity.

After the jury found appellant guilty, the State offered further evidence about the Grafton Road shooting during the punishment phase. Bullets were lodged in homes and vehicles in the neighborhood, although no one was hurt. Appellant testified during the punishment phase, explaining that although he had driven the Tahoe, he did not shoot Salmon. He testified that all of the shooting was done by Reyes and Heyby. Appellant's mother testified, as did the mother of one of appellant's children and appellant's stepbrother. These witnesses testified that appellant was a good father and a hard worker. The jury sentenced appellant to 30 years' imprisonment and declined to assess a fine. This appeal followed.

## DISCUSSION

### 1. Sufficiency of the evidence

In his first issue appellant contends that even when the evidence is viewed in the light most favorable to the jury's verdict, it is legally insufficient to show he was a party to Salmon's death. Appellant argues: (1) Salmon's boyfriend Rosales did not identify him; (2) shell casings at the scene did not reveal any fingerprints or DNA; (3) Rosales testified that the suspects arrived in a Tahoe, but appellant was detained three hours later in a Silverado pickup truck; (4) Rosales testified that the guns had silencers, but there were no silencers on the weapons recovered by police; and (5) neither the cell phone evidence nor the firearm evidence proves his guilt beyond a reasonable doubt. In response, the State concedes that the evidence is "largely

—4—

circumstantial," but argues that a rational factfinder could logically conclude that appellant was either a party or a principal to Salmon's death.

*Murder*

A person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE § 19.02(b)(1). Use of a deadly weapon raises an inference of intent. *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012) (specific intent to kill may be inferred from use of deadly weapon). A firearm is a deadly weapon. TEX. PENAL CODE § 1.07(a)(17)(A) (definition of deadly weapon).

*Law of parties*

Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE § 7.01(a). "A person is criminally responsible for an offense committed by the conduct of another if: . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). Mere presence alone will not constitute one as a party to an offense.

*Standard of review*

We evaluate a challenge to the sufficiency of the evidence under the standards established in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We review the evidence in the light

–5–

most favorable to the verdict to determine whether a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 894–95. This standard of review for legal sufficiency is the same for both direct and circumstantial evidence. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is considered as probative as direct evidence and is sufficient, standing alone, to establish a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Circumstantial evidence alone also may be sufficient to establish that a defendant was a party to an offense. *Id.*

In our review, "[t]he standard we must apply deals only with 'the record evidence adduced at the trial.'" *Delgado v. State*, 635 S.W.3d 730, 745 (Tex. App.—Dallas 2021, pet. ref'd) (quoting *Jackson*, 443 U.S. at 324). "This includes evidence both properly and improperly admitted, *see, e.g., Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007), but it cannot include evidence not admitted." *Id.*

We defer to the trier of fact's resolution of any conflicting inferences that are raised in the evidence and presume that the trier of fact, in this case the jury, resolved such conflicts in favor of the prosecution. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899. We will uphold the verdict unless a rational factfinder must have had reasonable doubt with respect to any essential element of the offense. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 895. The State need not disprove all reasonable alternative hypotheses that are inconsistent with appellant's guilt. *Wise*, 364 S.W.3d

at 903. Rather, we consider only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict. *Hooper*, 214 S.W.3d at 13.

Reversal on evidentiary sufficiency grounds is restricted to "the rare occurrence when a factfinder does not act rationally." *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *see Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014) (stating that a reviewing court should not act as a "thirteenth juror"). In other words, the appellate scales are weighted in favor of upholding a trial court's judgment of conviction. *Winfrey v. State*, 323 S.W.3d 875, 879 (Tex. Crim. App. 2010).

### The State's evidence

The State relies on ballistics and firearms evidence, cell phone location data, evidence relating to the Tahoe and Silverado vehicles, electronic messages, and social media posts in support of its contention that there was sufficient evidence to support the jury's verdict of guilt.

*Firearms and ballistics.* The State cites evidence that (1) the medical examiner testified that Salmon died from gunshot wounds, (2) the bullet fragments retrieved from Salmon's body were .22 caliber and consistent with a .223 cartridge, although they could not be matched to or excluded from any specific weapon; (3) a crime scene technician testified that 45 of the 84 cartridge casings at the scene of Salmon's death were .223 caliber cartridge casings, and a firearms examiner testified

that two of the casings at the murder scene were fired from an AR-style rifle recovered from a traffic stop; (4) that weapon was retrieved from the bed of a Silverado pickup truck stopped for speeding in a nearby neighborhood approximately three hours after Salmon was shot; (5) appellant was in the bed of the pickup truck with the .223 rifle when he was arrested during the traffic stop; (6) appellant was wearing protective body armor at the time of his arrest, which the arresting officer testified was unusual; (7) a trace evidence examiner testified that when appellant was swabbed for gunshot residue after his arrest, the examination revealed the maximum number of particles on each of appellant's hands, indicating that appellant had either fired a gun, been in the presence of someone firing a gun, or had handled a gun that evening; (8) when appellant was arrested, he was in a truck speeding away from the direction of a drive-by shooting on Grafton Road; and (9) at the Grafton Road shooting location, additional .223 cartridge casings were found that matched the rifle used in Salmon's murder.

*Cell phone location data*. The State relies on evidence that both Reyes's and appellant's cell phones were in the area of Salmon's death at the time she was shot, in the area of the Grafton Road shooting at the time it occurred, and in the area of the traffic stop when appellant was arrested.

*Vehicles*. Rosales testified that he saw the shooters drive up in a Tahoe. Dallas Police Detective Frank Serra testified that he obtained information from "multiple witnesses" that the Tahoe had a lift kit and tires with dark colored rims. A Tahoe

matching this description appeared on Reyes's Facebook feed, posted for sale the day after Salmon's death. The State also cites Serra's testimony that while investigating the murder, he saw a tan Tahoe leaving appellant's residence but was unable to catch up to it to obtain a license plate number.

*Electronic communications*. The State relies on evidence that hours before Salmon was shot, appellant and Reyes sent messages to each other about getting together and hunting down an unidentified person. During that exchange, appellant sent Reyes a picture of a person holding large caliber handguns. In response, Reyes sent appellant a picture of a .45 handgun that looked similar to a firearm recovered in the traffic stop. The text conversation reflected that appellant picked up Reyes at Reyes's home before Salmon's death. After appellant picked up Reyes, their documented electronic conversation ended for approximately 14 hours. After his arrest from the stop of the Silverado, appellant had additional conversations about being arrested in the bulletproof vest, about the police asking him whether he or Reyes "was the boss," and about whether Reyes had "snitch[ed] me out."

### Conclusion

Although the evidence was circumstantial, we conclude that a rational jury could have found the essential elements of murder beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 13. Salmon's death was caused by the intentional use of a deadly weapon. *See* TEX. PENAL CODE § 19.02(b)(1) (murder); *Cavazos*, 382 S.W.3d at 384 (use of deadly weapon). The State offered

–9–

evidence from which a rational juror could conclude, beyond a reasonable doubt, that appellant acted "with the intent to promote or assist" in committing Salmon's murder and aided others in committing the offense. TEX. PENAL CODE § 7.01(a) (parties to offenses); *Id.* § 7.02(a)(2) (criminal responsibility for conduct of another). We decide appellant's first issue against him.

## 2. Admission of evidence of extraneous offense

In his second issue, appellant argues the trial court erred when it admitted evidence of an extraneous offense, a shooting at 2727 Grafton Road that occurred approximately three hours after Salmon's murder.

### *Admissibility of other crimes, wrongs, or acts*

Rule of evidence 404(b)(1) disallows evidence of crimes, wrongs, or other acts solely to prove a person's character to show that the person acted in conformity with that character on a particular occasion. TEX. R. EVID. 404(b)(1). Further, "[w]hen an extraneous offense is offered to prove identity, the common characteristics or the device used in each offense must be so unusual and distinctive as to be like a 'signature.'" *Taylor v. State*, 920 S.W.2d 319, 322 (Tex. Crim. App. 1996). "In determining similarity of the offenses for the purpose of establishing identity, appellate courts should take into account both the specific characteristics of the various offenses and the time interval between them." *Johnson v. State*, 68 S.W.3d 644, 651 (Tex. Crim. App. 2002).

*Standard of review*

"When reviewing a trial court's ruling on the admission of evidence, an appellate court applies an abuse of discretion standard of review." *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). "A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement." *Id.*

*Rule 404 analysis*

Appellant argues that there were no unusual or distinctive common characteristics between Salmon's murder and the shooting on Grafton Road. *See Taylor*, 920 S.W.2d at 322. He contends (1) the locations were not near each other; (2) the suspect vehicles were different; (3) no witness provided suspect descriptions; (4) Rosales testified the shooters used silencers on their weapons, but the weapons recovered did not contain silencers and were not threaded to receive silencers; (5) appellant was not identified as a shooter or participant at either location; (6) the matching shell casings were not sufficient to prove that appellant was responsible for the murder when there was no evidence that appellant was present at either location; and (7) there was no common "signature" between the two crimes. He concludes that because the evidence was offered only to establish that he acted in accordance with a character trait, it was inadmissible under rule of evidence 404(a)(1).

The State responds that extraneous-acts evidence is admissible under both rule 403 and rule 404(b) if it is relevant to a fact of consequence apart from its tendency

–11–

to prove conduct in conformity with character and the probative value of the evidence is not substantially outweighed by unfair prejudice. *See Johnston v. State*, 145 S.W.3d 215, 219–20 (Tex. Crim. App. 2004) (discussing application of rule 404(b)). The State contends the evidence was not submitted to prove character conformity, but was offered to establish appellant's identity to the offense, and appellant's identity was a central issue at trial.

The State argues that the offenses were similar. They occurred the same night, within three hours of each other. At the time of both offenses and appellant's arrest, location data showed appellant's and Reyes's cell phones in the area. The police collected multiple cartridge casings at both scenes, demonstrating that more than one weapon was used. The State offered evidence that at California Crossing, police collected 45 cartridge casings from fired .223 caliber ammunition and 28 casings from fired.45 caliber ammunition. At the Grafton Road shooting, police recovered 24 casings, 15 of which were .223 caliber and 9 were .45 caliber. At California Crossing, the majority of the .223 casings were located along the road. At the Grafton Road shooting, all the .223 casings were gathered along the road. A .223 casing from the Grafton Road shooting matched the .223 rifle seized by law enforcement during appellant's arrest. A .223 casing from California Crossing matched the same rifle. The handgun seized with the rifle also matched with cartridge casings from both Grafton Road and California Crossing.

The State also cites evidence that the shooters at both locations arrived together in a single vehicle. Rosales testified that more than two shooters opened fire from a single vehicle that brought them to California Crossing. In the Silverado stopped by police after the Grafton Road shooting, fired and unfired bullets were found. These bullets matched the caliber of casings found at the Grafton Road crime scene, and the State argues this evidence supports an inference that the Silverado's occupants fired their weapons from that vehicle on Grafton Road.

The evidence showed that on the same night, the same weapons were shot from a vehicle in two locations, and appellant's and Reyes's phones were in the area when each offense occurred. *See Ransom v. State*, 503 S.W.2d 810, 813 (Tex. Crim. App. 1974) (sufficient similarities between offenses where both were robberies committed a gunpoint in Dallas three days apart and the defendant was aided by a confederate); *Sharper v. State*, 485 S.W.3d 612, 622 (Tex. App.—Texarkana 2016, pet. ref'd) (applying *Ransom* to similar circumstances). We conclude the trial court did not abuse its discretion in admitting evidence of the Grafton Road shooting to show identity. *See Casey*, 215 S.W.3d at 879.

### Rule 403 analysis

We next consider whether the evidence's probative value substantially outweighed its prejudicial effect. Rule of evidence 403 provides that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury; by

considerations of undue delay; or by needless presentation of cumulative evidence. TEX. R. EVID. 403. "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (footnotes and internal quotation marks omitted).

Accordingly, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (internal citation omitted). A Rule 403 analysis generally includes balancing the following non-exclusive factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational, but lasting way; (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019).

As we have discussed, the evidence of the Grafton Road shooting was highly probative in linking appellant to the date, time, location, and weapons used in Salmon's murder. *See id*. As for the potential of the evidence to impress the jury in an irrational, lasting way, the evidence of the Grafton Road shooting where no one was injured was no more inflammatory than the charged offense of murder. *See*

–14–

*Taylor*, 920 S.W.2d at 323 ("the first murder, being no more heinous than the second, was not likely to create such prejudice in the minds of the jury that it would have been unable to limit its consideration of the evidence to its proper purpose"). Although some time was needed to develop the evidence, including testimony from an officer who testified about shell casings found at the Grafton Road scene, most of the testimony was directed to the California Crossing crime scene, related ballistics, the evidence found in the Silverado at the time of appellant's initial arrest, and Salmon's injuries. *See id.* The State's need for the evidence was high, as the matching ballistics connected specific weapons to the California Crossing crime scene. *See Colone*, 573 S.W.3d at 266. Consequently, we conclude that the evidence's probative value was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403.

### *Conclusion*

We conclude the trial court did not abuse its discretion by admitting evidence of the Grafton Road shooting. *See Casey*, 215 S.W.3d at 879 (standard of review). We decide appellant's second issue against him.

### 3. Admission of social media evidence

In his third issue, appellant challenges the trial court's admission of evidence gained from his social media, including photographs, written messages, and videos. He contends the evidence, admitted over his objection, related only to extraneous offenses, not to Salmon's murder. *See* TEX. R. EVID. 404(b)(1) ("Evidence of a

–15–

crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). He argues (1) there were no similar characteristics between the extraneous offenses and the underlying charge to reveal a distinctive pattern, (2) none of the evidence is probative of any intent regarding Salmon, and (3) in any event, he contested only identity, not intent, so evidence of his intent was not relevant.

Appellant identifies the following social media communications in his brief: (1) a message sent by appellant to Reyes on November 4, 2019, stating "Get ready 'cause I'm finna to kill somebody this weekend," and Reyes's reply sending a picture of a Glock pistol, (2) a message from appellant to Reyes on November 5, stating "You got the gun? I want to shoot somebody," and Reyes's reply, "Yes"; (3) a message on November 7 from appellant to Reyes and Heyby, "Let's go shoot"; Reyes responded "Where?" and Heyby replied "Anywhere"; (4) a photograph sent by appellant on November 16 which depicted several individuals sitting around holding handguns, and on the same date, a photograph sent by Reyes of a .45 caliber handgun; (5) a photograph sent by Reyes on November 18 of a vehicle that matched the description of the suspect vehicle from the shooting, stating that the vehicle was for sale; (6) a message appellant sent on November 19 that he "had the vest on," (7) a message appellant sent on November 19 stating "Trying to charge us with murder y assault with a deadly weapon," at a time when, according to Serra, the

police department had no reason to believe appellant was involved in the murder; and (8) a message from Reyes on November 20 instructing appellant that if they were pulled over, appellant should "shoot them," to which appellant replied "I don't got sh\*\*," and Reyes responded "I give you the glock."[2]

After a hearing outside the jury's presence, the trial court found that the evidence was relevant and the probative value was not outweighed by improper prejudice. The court ruled that the evidence was admissible if the State could lay the predicate for admission. Officer Serra provided the predicate testimony and the trial court admitted the evidence.

### Standard of review

"Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009) (internal quotation omitted). The court in *De La Paz* explained that the balance between probative value "and the counter factors set out in Rule 403 . . . is always slanted toward admission, not exclusion, of otherwise relevant evidence." *Id.* Accordingly, the trial court's ruling is reviewed for abuse of discretion. *Id.* As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *Id.* The court continued,

---

[2] We note that appellant did not reference other communications from the evening of the murder, including his communications with Reyes reflecting that appellant picked up Reyes at Reyes's home the evening of Salmon's murder.

A trial court's ruling is generally within this zone if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling.

*Id.* at 343–44 (footnotes and citations omitted). Even if the trial court erred by admitting the evidence, we will not reverse unless the error affected appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018) (erroneous admission of evidence is non-constitutional error, reversible only when there is "a substantial and injurious effect or influence in determin[ing] the jury's verdict").

### *Extraneous offenses*

An "extraneous offense" is any act of misconduct, whether resulting in prosecution or not, that is not shown in the charging papers. *Rankin v. State*, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996). Under rule 404, evidence of other crimes, wrongs, or other acts is inadmissible if it is offered to prove the character of a person in order "to show that on a particular occasion the person acted in accordance with the character," but it may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(1), (2).

Appellant argues that because he "did not make intent an issue," evidence of extraneous offenses cannot be admitted to prove his intent. He cites *Rankin v. State*,

–18–

974 S.W.2d 707, 719 (Tex. Crim. App. 1996) (op. on reh'g), in support of his

argument. In *Rankin*, the court explained,

> Extraneous offense evidence will generally always be relevant, but the
> permissible purpose for which the proponent is offering it may not be.
> For instance, where intent is a material issue and it is not inferable from
> the act itself, evidence of other acts probative of such intent is relevant
> and the trial court's decision to admit such evidence is proper. Where
> the state's direct evidence, however, clearly shows the intent element
> of the crime and that evidence is uncontradicted by the defendant or not
> undermined by cross-examination of the state's witnesses, the offer of
> other crimes is unjustified due to the lack of relevancy. . . .
>
> It is for this reason that the proponent of 404(b) evidence must persuade
> the trial court that the extraneous offense evidence is being offered for
> a purpose other than character conformity, and that this other purpose
> "tend[s] to make the existence of any fact that is of consequence to the
> determination of the action more probable or less probable than it would
> be without the evidence." TEX. R. CRIM. EV. 402. If the appellate court
> finds that the proffered evidence would not tend to make the existence
> of a material fact more or less probable, then the court must conclude
> that the trial court abused its discretion.

*Id.* at 719 (footnotes omitted).

Even if evidence of an extraneous offense is not admissible to show intent,

however, it may be admissible to show identity. *Carter v. State*, 145 S.W.3d 702,

709 (Tex. App.—Dallas 2004, pet. ref'd). There is a two-part test for determining

when an extraneous offense is admissible for proof of identity: (1) identity is a

contested issue in the case, and (2) "something unique exists that connects the

extraneous offense to the charged offense—some distinguishing characteristic

common to both the extraneous offense and the offense charged." *Id.* (internal

quotation omitted).

Appellant confirms that at trial, "the Defense focused on contesting identity," satisfying the first part of the test. *See id.* As to the second part of the test, there are distinguishing characteristics common to both the electronic communications and the murder, including but not limited to photographs of the same or similar weapons as those used in the offense, the photograph of a vehicle matching the description of the Tahoe used in the offense, and appellant's communications about picking up Reyes on the night of the murder. *Cf. id.* at 710 ("We should not engraft exceptions to rule 404 that would allow extraneous offenses to be admitted when identity is an issue absent a distinct connection between the charged and the extraneous offenses."). This evidence is probative on appellant's identity, making it more likely that appellant participated in the offense. *See* TEX. R. EVID. 404(b)(2) (evidence of crime, wrong, or other act may be admissible to prove identity).

Further, the State responds that appellant's "extraneous offense" argument misses the mark because admission of extraneous offense evidence was not at issue. The State explains that the social media exhibits admitted at trial did not depict or reflect extraneous offenses. Instead, the State contends the exhibits were admissible under rule of evidence 404(b)(2) to show steps appellant took in preparation for the charged offense. *See Daggett v. State*, 187 S.W.3d 444, 451 (Tex. Crim. App. 2005) (proof of defendant's "plan" is admissible under rule 404(b)(2) to show acts defendant took in preparation for ultimate charged offense). At the hearing on admissibility, the trial court asked the State to clarify whether the evidence was

offered as "extraneous offenses or bad act" or as "a part of the same criminal episode." The State responded, "I believe it's a part of the same criminal episode."

We conclude the trial court did not abuse its discretion in concluding that the evidence was relevant to issues other than character conformity, *see Rankin*, 974 S.W.2d at 719, or was admissible to show appellant's acts in preparation for the murder, *see Daggett*, 187 S.W.3d at 451. We decide appellant's third issue against him.

### 4. Modification of judgment

In its cross-issue, the State requests that we modify the judgment to reflect (1) an affirmative finding on use of a deadly weapon, (2) that appellant was charged under penal code § 19.02(b), not § 19.02(c), and (3) that the court costs assessed were $286, not $289. Appellate courts may modify a trial court's judgment and affirm it as modified. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993).

This Court "has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so." *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Appellate courts may reform trial court judgment where "the evidence necessary to correct the judgment appears in the record." *Id.* Because we have the necessary information to do so, we modify the judgment in the trial court's cause number F19-76997-S to reflect the jury's deadly weapon finding, that

–21–

appellant was charged under penal code § 19.02(b), and that the court costs assessed were $286.

## CONCLUSION

We modify the trial court's judgment and affirm the judgment as modified.

/Maricela Breedlove//
220087f.u05       MARICELA BREEDLOVE
Do Not Publish     JUSTICE
TEX. R. APP. P. 47.2(b)

–22–



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

EDGAR CORTEZ CARDENAS,
Appellant

No. 05-22-00087-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F19-76997-S.
Opinion delivered by Justice
Breedlove. Chief Justice Burns and
Justice Partida-Kipness participating.

Based on the Court's opinion of this date, the judgment of the trial court is

**MODIFIED** to reflect the jury's deadly weapon finding, to reflect that that appellant

was charged under section 19.02(b) of the Texas Penal Code, and that the court costs

assessed were $286.00.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 24th day of May, 2023.